**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **STEVEN TODD FAIRCLOTH,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** **5:26-cv-00056-TES** |
| **BIBB COUNTY, GEORGIA,** *et al.,* | |
| *Defendants.* | |

## ORDER DISMISSING PLAINTIFF'S RECAST COMPLAINT IN PART

Pro se Plaintiff Steven Todd Faircloth commenced this civil action on February 6, 2026, by filing a complaint. [Doc. 1]. On May 11, 2026, the Court issued an Order to Show Cause giving Plaintiff 14 days to show that he had properly effectuated service of process. [Doc. 2]. Fifteen days later, Plaintiff filed both a Motion for Extension of Time to Complete Service of Process, and a Motion for Leave to Proceed *In Forma Pauperis* ("IFP")—that is, without prepaying fees and costs. [Doc. 3]; [Doc. 4]. Upon reviewing Plaintiff's IFP materials and his Complaint, the Court noticed that Plaintiff only filed what appeared to be every other page of his Complaint. *See* [Doc. 1]. The Court, therefore, granted Plaintiff IFP status, and ordered him to file a recast complaint. [Doc. 5]. With that done, the Court must now screen his Recast Complaint. *See* 28 U.S.C. § 1915(e).

Since Plaintiff is proceeding *in forma pauperis*, § 1915(e) requires the Court to review his pleadings to determine whether they are frivolous or malicious or fail to state a claim for which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). These types of complaints are subject to sua sponte dismissal by a district court. *Id.* at 324 (noting that dismissals under § 1915(e) "are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints"). A district court may conclude that pleadings are frivolous where the allegations are "clearly baseless," "fanciful," "fantastic," "delusional," or without "an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31, 32–33 (1992). During analysis, all factual allegations in a complaint must be viewed as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). Courts, however, under § 1915(e), have the "unusual power" to "pierce the veil" of a complaint's factual allegations and dismiss claims predicated on "wholly incredible" factual contentions. *Denton*, 504 U.S. at 33; *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989).

Here, Plaintiff brings 12 claims against 24 Defendants.[1] [Doc. 6]. His claims are based on the events of two separate time periods: April of 2022 and June of 2024. [*Id.* at ¶ 3]. On April 4, 2022, Plaintiff's white 2012 Honda Accord was stolen. [*Id.* at ¶¶ 38, 40].

---

[1] Plaintiff has two other cases in the Middle District of Georgia. *See Faircloth v. Bibb County, Georgia, et al*, No. 5:25-cv-00440-MTT (Oct. 8., 2025); *Faircloth v. Simmons, et al.*, No. 5:25-cv-00439-MTT (Oct. 8, 2025). The Court has reviewed those cases and determined that this case is not substantially similar enough to them to warrant transfer or consolidation as they primarily concern events on September 23, 2023, and other Defendants.

He reported it as stolen to the "BCSO" (presumably the Bibb County Sheriff's Office). [*Id.* at ¶ 38]. The "CAD" (presumably, the dispatch report), states that the call was "entered as Stolen Vehicle, changed to Disturbance-Domestic, changed back to Stolen Vehicle, changed . . . to Civil Problem, Routine/low, and changed . . . to Disturbance-Domestic, In Progress/High." [*Id.* at ¶ 42].

Dispatch called Plaintiff back and asked him to step outside so the responding officers could locate him. [*Id.* at ¶ 46]. Plaintiff states that he gave the officers his street address during his earlier call, but the report did not contain it. [*Id.* at ¶¶ 45–46]. At the scene, the responding officers asked Plaintiff to give his victim statement. [*Id.* at ¶ 51]. Plaintiff states the officer's notepad was blank, and he already provided the information in his initial 911 call. [*Id.* at ¶¶ 50, 54]. A few hours later, another officer came and prepared a theft report. [*Id.* at ¶ 59].

On April 6, 2022, the sheriff's office received a lead that Plaintiff's stolen Honda was at a motel. [*Id.* at ¶ 62]. An officer was dispatched, but records do not show if the officer went to the motel. [*Id.* at ¶ 65]. The next day, Defendant Inzar responded to a call on Napier Avenue for recovery of Plaintiff's Honda. [*Id.* at ¶ 69]. Plaintiff's Recast Complaint contains three different narratives of what happened on Napier. First, police records state that the "Honda crashed in a yard, the driver jumped out and ran, the vehicle remained running . . . ." [*Id.* at ¶ 70]. Second, according to Defendant Inzar, "an unidentified citizen reported that the owner chased the subjects, a fight occurred, and

3

the owner did not want law enforcement notified before leaving." [*Id.* at ¶ 71]. Third, Plaintiff's own narrative is that "[t]he occupants fled after the crash, the Honda was still running, and Plaintiff entered his own vehicle and attempted to keep [the driver] at the scene until law enforcement arrived." [*Id.* at ¶ 73]. Plaintiff attempted to prevent the driver from leaving, and a "physical confrontation occurred." [*Id.* at ¶ 74]. According to Plaintiff, a civilian in a white pickup truck pulled up with a firearm and yelled "I got my gun on y'all. You better break it up." [*Id.* at ¶ 75].

Plaintiff states that certain items belonging to the thieves were in the Honda when it was recovered but were not listed in police reports. [*Id.* at ¶¶ 79–81]. Furthermore, upon Plaintiff's request, the sheriff's office told Plaintiff it did not have body camera footage from Defendant Inzar on April 7. [*Id.* at ¶¶ 82–84]. When it was all over, a tow company took the Honda. [*Id.* at ¶ 87]. The tow company informed Plaintiff that it possessed the car and required him to pay $350 for its release. [*Id.* at ¶¶ 87–88]. Plaintiff disputes the police records, which state that he was informed "in person" of the location of the Honda. [*Id.* at ¶ 89].

On April 12, 2022, Plaintiff and the co-tenant of his business's building got into a dispute over the location of Plaintiff's parked Honda. [*Id.* at ¶¶ 92–95]. Defendant Inzar was once again the officer dispatched to the scene. [*Id.* at ¶ 98]. According to Plaintiff, Defendant Inzar knocked on his rear door and told him he could not park there. [*Id.* at ¶ 100]. Plaintiff "questioned [Defendant] Inzar's authority to dictate parking on private

4

rental property." [*Id.*]. Defendant Inzar then "displayed or removed his handcuffs, and threatened Plaintiff with jail." [*Id.*]. During the next several days, Plaintiff called the police and asked for an officer other than Defendant Inzar who would help move his co-tenant's car. [*Id.* at ¶¶ 104–105]. Then, on April 20, 2022, Plaintiff released air from his co-tenant's tire. [*Id.* at ¶ 109]. Defendant Inzar once again showed up on the scene. [*Id.* at ¶ 111]. According to Plaintiff, the body camera footage shows his co-tenant admitting, "in substance," that he hit Plaintiff with a stick "approximately" ten or twelve times. [*Id.* at ¶ 110]. What is clear from Plaintiff's Recast Complaint is that the situation escalated, the police were called, and Plaintiff was ultimately arrested. [*Id.* at ¶¶ 108–113]. Plaintiff complained that the handcuffs hurt, and Defendant Inzar responded that "It ain't supposed to feel good." [*Id.* at ¶ 114]. Plaintiff says he repeatedly told Defendant Inzar his handcuffs were hurting. [*Id.* at ¶ 115]. The other officer at the scene—Defendant Taylor—did not intervene. [*Id.* at ¶ 124].

During the drive to the law enforcement center, Plaintiff says Defendant Inzar "repeatedly accelerated and braked abruptly while Plaintiff was restrained, causing Plaintiff to be thrown or jolted and causing additional pain and distress." [*Id.* at ¶ 126]. There is no footage from the inside of the police car during that drive. [*Id.* at ¶¶ 127–129].

Then, in January of 2024—two years later—Plaintiff brought "the Honda theft, identified suspects, missing warrants, recovery, tow, notice, BWC, and damages issues

to [Defendants] Collins and Ammons." [*Id.* at ¶ 131]. According to Plaintiff, Defendant Collins acknowledged several things "in substance" during that meeting. [*Id.* at ¶ 132]. Defendants Collins and Ammons said they would handle the complaint process and provide a response. [*Id.* at ¶ 133]. Three months later, Plaintiff was back in the sheriff's office again. He stated he "would take the matter to Major Gregory Rachel," and Defendant Collins responded, "Get your ass out of here, Sport. You can talk to Major Rachel from jail." [*Id.* at ¶ 134]. Plaintiff, nevertheless, "continued sending complaints, records requests, and requests for investigation and redress to command personnel." [*Id.* at ¶ 136]. Plaintiff does not specify how many complaints and requests he sent.

Three more months passed, and Plaintiff went back to the sheriff's office "seeking to speak with Chief Deputy Michael Scarbary." [*Id.* at ¶ 137]. He "personally observed Scarbary enter the building reading a printed copy of Plaintiff's email concerning the Honda grievances." [*Id.*]. Scarbary told Plaintiff he needed time to review it. [*Id.*]. A few days later, on June 24, 2024, Plaintiff met with Scarbary and Collins. [*Id.* at ¶ 138]. During that meeting, "Plaintiff sought civil redress for approximately $6,700 in documented Honda-related damages and asked BCSO to investigate or pursue the persons identified in the theft report . . . ." [*Id.* at ¶ 139].

Three days later, Plaintiff "called or went to" the precinct seeking to speak with Rickert "concerning the Honda matter." [*Id.* at ¶ 142]. During an exchange with Rickert and Collins, Rickert arrested Plaintiff. [*Id.* at ¶ 143]. The report from Collins says that

Plaintiff continuously filed frivolous complaints and called law enforcement and then tried to extort $6,700 from Bibb County. [*Id.* at ¶¶ 146–149]. Plaintiff was detained for approximately seventy-two days, "in part because of an existing probation hold." [*Id.* at ¶ 152].

The matter was ultimately dismissed before indictment "for insufficient evidence." [*Id.* at ¶ 153]. The dismissal stated that "the alleged affirmative response to Collins's question served as the basis asserted for the complaint and probable cause." [*Id.* at ¶ 154].

First, "fictitious party-pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010); *see also Plyatsko v. Benton*, No. 25-11784, 2026 WL 1195900, at *3 (11th Cir. May 1, 2026) (where the district court dismissed fictitious parties at the 1915(e)(2)(b) screening stage). There is one exception: "when the plaintiff's description of the defendant is so specific as to be at the very worst, surplusage." *Id.* (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992)). Plaintiff here sues "John/Jane Doe Defendants 1–10." [Doc. 6, ¶ 26]. He describes them as the "personnel whose names and roles are presently unknown and who participated in CAD routing, GCIC/NCIC activity, vehicle-recovery processing, tow and owner-notice handling, BWC/Axon retention or non-production, records access, booking, detention, or the June 2024 warrant process." [*Id.*]. In other words, they are unidentified, unknown people who worked in unknown roles and were involved in virtually every factual allegation

underlying his claims. His description does not fall under the exception. Therefore, Defendants John/Jane Does 1–10 are **DISMISSED**.

Next, "[e]xpiration of the applicable statute of limitations warrants dismissal of a claim as frivolous." *Borda v. Chase*, 630 F. App'x 889, 890 (11th Cir. 2015) (citing *Clark v. Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 640 n.2 (11th Cir. 1990)). "Dismissal . . . 'on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred.'" *Winston v. Walsh*, No. 5:19-cv-00070-TES, 2019 WL 3068451, at *3 (M.D. Ga. July 12, 2019) (quoting *Bhd. of Locomotive Eng'rs v. CSX Transp., Inc.*, 522 F.3d 1190, 1194 (11th Cir. 2008)). "This is because [a] statute of limitations bar is an affirmative defense," and a plaintiff is "not required to negate an affirmative defense in his complaint." *Id.* (citing *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)) (cleaned up).

Most of Plaintiff's factual background occurred in 2022. "Federal law . . . determines the date on which the statute of limitations begins to run, and, for a § 1983 action, the statute begins to run from the date the facts supporting a cause of action are apparent or should be apparent to the plaintiff." *Smith v. Mitchell*, 856 F. App'x 248, 249 (11th Cir. 2021). "The limitations period for filing an action under § 1983 is typically determined by the state-law period for personal injury torts, which, in Georgia, is two years." *Id.* (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)); *see also* O.C.G.A. § 9-3-33. Plaintiff filed his original Complaint on February 6, 2026, well over two years after his

8

2022 factual allegations occurred. Therefore, Plaintiff's claims arising out of these factual allegations—Counts IV, V, VI, and VII—are all time-barred and therefore frivolous.[2] Furthermore, Plaintiff's state law claim for battery—Count "VIII-A"—is also barred by Georgia's statute of limitations and therefore frivolous. The Court **DISMISSES** Counts IV, V, VI, VII, and "VIII-A." With no other viable claims against Defendants Taylor or Davis, they are also **DISMISSED**.[3]

Next, "all plaintiffs who sue a municipality under § 1983 must show that execution of the municipality's policy or custom caused the alleged injury." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1307 n.21 (11th Cir. 2019) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694–95 (1978)). Here, Plaintiff sued Bibb County, Georgia. [Doc. 6]. He says he sues Bibb County "only to the extent the evidence establishes that the . . . local-government functions were governed by County policy or a County final policymaker." [*Id.* at ¶ 12]. He also alleges that "the policy, custom, deliberate indifference, failure to train or supervise, or ratification caused the constitutional injuries." [*Id.* at ¶ 211]. In other words, his only allegation of a policy or

---

[2] Plaintiff attempts to argue tolling as a reason why his claims are not time-barred. [Doc. 6, ¶¶ 27–37]. However, Plaintiff's arguments are unpersuasive. Simply put, he knew about the events underlying these claims—including the alleged excessive force of Defendant Inzar, alleged delays in investigating his Honda—as they happened. The fact that Plaintiff chose to wait four years until he had records and body-camera footage does not mean the statute of limitations is tolled.

[3] The Court also wants to make it absolutely clear to Plaintiff that there is no "right of any kind to an investigation" of his complaints "by the Sheriff's Office, much less one created by the Constitution." *Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002). Even if the Sheriff's Office conducted no investigation of his claims, they would not have violated his rights. Therefore, Plaintiff's allegations regarding the investigation that are not contained within his numbered claims are frivolous.

custom is conclusory, which is insufficient.[4] *See Miller v. Bartow Cty., Ga.*, 478 Fed.

App'x. 549, 550 (11th Cir. 2012) (conclusory allegations insufficient); *Harvey v. City of*

*Stuart*, 296 Fed. App'x. 824, 826 (11th Cir. 2008) (same). Accordingly, the Court

**DISMISSES** Bibb County, Georgia, as a Defendant.

Plaintiff's state law conversion claim fails to state a claim. The elements of

conversion under Georgia law are:

1) proof of title or plaintiff's immediate possession of the property;
2) actual possession by the defendant;
3) demand by the plaintiff for return of the property;
4) defendant's refusal to return the property; and
5) value of the property.

*Mouzin Bros. Farms, LLC v. Dowdy*, No. 7:20-CV-197 (TQL), 2023 WL 11965338, at *6

(M.D. Ga. Sept. 14, 2023). Plaintiff alleges that property "potentially connected to the

occupants" (the alleged thieves) was recovered from the Honda. [Doc. 6, ¶ 79]. But the

only place he alleges that any of *his* property was taken by any Defendant is in his

conversion/trespass claim. There, he alleges that Defendant Inzar took "the

pocketknife." [*Id.* at ¶ 219]. Plaintiff has not established most of the elements of

conversion, but the Court specifically notes that he has not pled that he demanded the

---

[4] Count VII is also a "failure to train or supervise" claim that purports to allege a policy or custom. [Doc. 6, p. 26]. However, it only alleges specific conduct from his recited facts. For example, he says "[t]he relevant practices include material CAD reclassification without effective verification; failure to transfer caller information to field units . . . ." [*Id.* at ¶ 208]. Even if he is alleging that these were policies rather than specific events—and those allegations were actually establish a policy or custom—they are still insufficient under *Monell*, 436 U.S. 658. Simply put, Plaintiff has not adequately linked these "policies" to a constitutional violation. *Id.* at 694. In fact, Plaintiff's policy allegations in Count VII are all based on actions from 2022, which are time-barred.

return of the property or that Defendant(s) refused to return it. Plaintiff's state law trespass to personalty claim in the same Count, on the other hand, is sufficiently pled.[5] Accordingly, the Court **DISMISSES** Plaintiff's conversion claim in Count "VIII-D." His trespass to personalty claim in the same count may continue to discovery.

Next, Plaintiff seeks "a declaration, to the extent a live controversy remains, that the June 27, 2024 seizure and subsequent legal process violated the First and Fourth Amendments and the April 20, 2022 force violated the Fourth Amendment." [Doc. 6, ¶ 223]. In other words, Plaintiff seeks a declaration that he is correct about the legal issues underlying his case—that his constitutional rights were violated. But that's not proper for an action seeking a declaratory judgment. *See Walker v. Fed. Nat'l Mortg. Ass'n*, No. 114-cv-01602-RWS-RGV, 2014 WL 12069852, at *9 (N.D. Ga. Dec. 19, 2014) (declaratory judgment act affords relief from uncertainty and insecurity of rights, status, and other legal relations) (quoting *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp 2d 1213, 1230 (S.D. Fla. Mar. 30, 2009)); *Pa. Thresherman & Farmers Mut. Cas. Ins. Co. v. Gardner*, 130 S.E.2d 507, 510 (Ga. Ct. App. 1963) (same). Furthermore, declaratory judgments are inappropriate to adjudicate past conduct. *Walker*, 2014 WL 12069852, at

---

[5] A trespass to personalty claim is for the "unlawful abuse of or damage done to the personal property of another." *Othman v. Navicent Health, Inc.*, 908 S.E.2d 223, 250 (Ga. Ct App. 2024), *cert. denied* (Mar. 18, 2025) (citing O.C.G.A. § 51-10-3). In fact, "improper inventories, defective receipts, and missing property have long been redressable in tort by actions for detinue, trespass to chattel, and conversion." *Grier v. Allen*, No. 6:18-CV-52, 2019 WL 4440130, at *13 (S.D. Ga. Aug. 15, 2019), *report and recommendation adopted*, No. 6:18-CV-52, 2019 WL 4420589 (S.D. Ga. Sept. 16, 2019) (quoting *Hudson v. Palmer*, 468 U.S. 517, 540 540 (1984) (O'Connor, J. concurring)). Plaintiff pled that his pocketknife was taken by Defendant Inzar, omitted from inventory, and then not returned. [Doc. 6, ¶ 219].

*9. Therefore, the declaratory judgment portion of Count XII[6] is improper and the Court

**DISMISSES** it. The equitable relief in Count XII remains as equitable relief for

Plaintiff's other claims.

Plaintiff's remaining claims—his First Amendment retaliation claim, Fourth

Amendment false arrest and malicious prosecution claims, and his state law false arrest

and malicious prosecution claims—all turn on the probable cause of his June 27, 2024,

arrest. *See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1308 (11th Cir. 2019)

(probable cause defeats malicious prosecution, false imprisonment, and retaliatory

arrest claims). As previously stated, the Court has the power at this stage to "pierce the

veil" of Plaintiff's pleadings. *Denton*, 504 U.S. at 33. While doing so casts doubt on

Plaintiff's claims, his edited retelling of events conveniently omits the details that would

lead to a finding of (or lack thereof) probable cause at this stage.

Plaintiff says the "arrest narrative" lists his arrest as "criminal attempt to commit

extortion" for trying to extort $6,700 from Bibb County. [Doc. 6, ¶ 150]. But the details

Plaintiff provides of the actual events of June 27, 2024, are sparse. He states he went to

the precinct once again to speak to the officers about his Honda from two years prior.

[*Id.* at ¶ 142]. Defendant Collins "intercepted or controlled the response and caused

---

[6] Plaintiff labels Count XII as Count "VII." [Doc. 6, p. 28]. However, Plaintiff broke the prior Count—Count "VIII"—into four parts, all with their own distinct claims. [*Id.* at pp. 26–28]. That Count is preceded by another Count "VII." [*Id.* at p. 26]. With two Count "VIIs," the Court renumbers this claim for clarity. That makes Plaintiff's second Count "VII"—his declaratory judgment claim—Count XII.

[Defendant] Rickert to arrest Plaintiff for attempted extortion." [*Id.* at ¶ 144]. Plaintiff admits he "sought civil redress" of $6,700 from Defendant Collins. [*Id.* at ¶¶ 138–39]. But he says the "discussion of ending complaints arose only after [Defendant] Collins asked a settlement-style hypothetical about whether the complaints would stop if compensation were paid." [*Id.* at ¶ 141]. According to the dismissal, Plaintiff said yes, though he seems to dispute that. [*Id.* at ¶ 154]. Bottom line, Plaintiff's retelling of events is sparse and edited such that any determination on probable cause at this stage would be guesswork. Accordingly, Plaintiff's claims based on probable cause—Counts I, II, III, "VIII-B", and "VIII-C"—continue past frivolity review.

As a final note, Plaintiff repeatedly seeks "leave to amend" throughout his Recast Complaint. *See, e.g.*, [*id.* at ¶ 221]. However, "[f]iling a motion is the proper method to request leave to amend a complaint." *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999). Even then, the motion must "(1) set forth the substance of the proposed amendment, or (2) attach a copy of the proposed amendment to the motion." *Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 902 (11th Cir. 2020). Plaintiff's requests to amend are improper.

Accordingly, upon review of Plaintiff's Recast Complaint [Doc. 6] under 28 U.S.C. § 1915(e), the Court **DISMISSES** Counts IV, V, VI, VII, "VII" (or Count XII under the Court's renumbering, Plaintiff's Declaratory Judgment count), and "VIII-A" as frivolous. 28 U.S.C. § 1915(e)(2)(B). The Court also **DISMISSES** Defendants John/Jane Doe 1–10, Taylor, Davis, and Bibb County. Plaintiff's remaining claims—Counts I, II, III,

13

"VIII-B, C, D" survive frivolity review. Since Plaintiff is proceeding IFP, the Court

**ORDERS** the United States Marshall Service to serve the remaining defendants and

**DENIES** Plaintiff's Motion for Extension of Time to Complete Service of Process **as**

**moot**. [Doc. 3].

     **SO ORDERED**, this 22nd day of June, 2026.

                S/ Tilman E. Self, III

                **TILMAN E. SELF, III, JUDGE**
                **UNITED STATES DISTRICT COURT**